IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

ISMIR T.,

                     Plaintiff,

  v.                                      Civil Action No.
                                          5:19-CV-0445 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW OFFICE          HOWARD D. OLINSKY, ESQ.
250 South Clinton St.             MELISSA A. PALMER, ESQ.
Suite 210
Syracuse, NY 13202

FOR DEFENDANT:

HON. ANTOINETTE L. BACON    CHRISTOPHER L. POTTER, ESQ.
United States Attorney for the    Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Acting Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on September 22, 2020, during a telephone conference, held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, for further proceedings consistent with the attached transcript.

4) The clerk is directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: September 30, 2020
Syracuse, New York

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ISMIR T.,

                        Plaintiff,

vs.                                             5:19-CV-445


COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

------------------------------------------------------------x
```

*DECISION* - September 22, 2020

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding


APPEARANCES (by telephone)

For Plaintiff:     OLINSKY LAW GROUP
                   Attorneys at Law
                   250 South Clinton Street
                   Syracuse, New York 13202
                     BY: MELISSA A. PALMER, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   15 New Sudbury Street
                   Boston, MA 02203
                     BY: CHRISTOPHER POTTER, ESQ.



*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1    THE COURT: All right. I'll have to let that be
2    the last word. Let me begin by thanking counsel for
3    excellent and spirited presentations. I found this to be an
4    interesting and extremely challenging case because of the
5    unique circumstances surrounding plaintiff's background.
6             This is an action brought pursuant to 42, United
7    States Code, Section 405(g) to challenge an adverse
8    determination by the Commissioner of Social Security finding
9    that plaintiff was not disabled at the relevant times and,
10   therefore, ineligible for the disability insurance benefits
11   sought.
12            Plaintiff was born in January of 1973 and is
13   currently 47 years old. He was 43 years of age at the time
14   of the alleged onset of disability in January of 2016.
15   Plaintiff stands 5-foot 6-inches in height and weighs
16   somewhere between 195 and 207 pounds.
17            Plaintiff was originally from Bosnia and emigrated
18   to the United States in 1997. Plaintiff's living
19   arrangements are somewhat unclear. He appears to live in
20   Liverpool, and the evidence is equivocal as to whether he is
21   living with a girlfriend, significant other, or wife. In any
22   event, he also lives with two children who at the time of the
23   hearing in this matter were 16 and 10 years of age and were
24   17 and 11 in October of 2017.
25            Plaintiff has a twelfth grade education, which he

underwent in Bosnia.  He did not contend that he attended any special education classes while in school.  Plaintiff drives.  The evidence is somewhat equivocal on the issue of reading, writing, speaking, and understanding English.  At page 270 plaintiff asserted that he speaks and understands English.  The record reflects, however, that he has needed the assistance of an interpreter at both the hearing and in appointments with some of his health care providers, including at page, for example, 378.  Dr. Rashid stated at page 441 that plaintiff cannot learn to speak or read English.

Plaintiff is right-handed.  Plaintiff has worked since the alleged onset of his disability on January 28, 2016, although not at substantial gainful activity levels.  While employed he has worked in various cleaning and custodial positions, including as a church cleaner and a college custodian at Onondaga Community College, or OCC.  Those were both part-time positions.  He also worked at Colonial Laundromat.  The evidence appears to suggest that he had the assistance of job coaches at least at the Colonial Laundromat and OCC positions.  Plaintiff was let go from his position at OCC based on an incident where he was harassed and had difficulty with fellow employees in 2017.

On the issue of work, I note that plaintiff did tell Dr. Shapiro, the examining psychologist, that he could

work full time at an easy job.  That appears at page 522 of the Administrative Transcript.

Physically, plaintiff suffered a traumatic brain injury in March of 1994 when he was shot in the right temporal region of his head, that appears at page 343, resulting in his being in a coma for some extended period of time.  He also has a history of seizure disorders, although he stated at 528 his last seizure was in 2010.  Those seizure disorders have occurred since 1995, according to 344 of the Administrative Transcript.  Plaintiff suffers from right arm pain, but there is no finding of rotator cuff or labral tear.  He also experiences numbness in his fingers.  He suffers from adhesive capsulitis, that appears at page 466 of the Administrative Transcript, as well as cervical radicular pain, trapezial muscle spasms, and headaches.

Mentally, plaintiff has been found to suffer from post-traumatic stress disorder, PTSD, major depressive disorder, anxiety, also characterized as general anxiety disorder.  He appears to have anger issues.  As described by Dr. Shapiro at 524, his mood was irritable.  He was admitted to a CPEP in July of 2017.  He was escorted there by the police where he was treated and released.

In terms of health care providers, plaintiff sees Dr. Andrew Hathaway for his primary needs; Dr. Ijaz Rashid, a neurologist, who he has seen since March of 2015.  Prior to

1  that he saw a neurologist named Dr. Ma at Crouse Hospital,
2  although there are no records from Dr. Ma.  Dr. Brett Greenky
3  has seen the plaintiff for his shoulder condition beginning
4  in November of 2017 and has administered at least two
5  Depo-Medrol injections, including at page 463 and 469
6  reference.  Dr. Greenky also referred plaintiff to physical
7  therapy, although there are no records in the Administrative
8  Transcript showing that he did actually go to physical
9  therapy.
10           In terms of his mental health needs, plaintiff
11  treated at Psychological Health Care with Dr. Panayotis
12  Petrou in 2016.  Since July of 2017 he has treated at the
13  St. Joseph's Hospital Health Center.  His treatment there was
14  overseen by Dr. Narayana Reddy.  He saw their Licensed Mental
15  Health Counselor James Amodio, as well as Nurse Practitioner
16  Shannon Spina, and Licensed Clinical Social Worker Sara
17  Freer.
18           Plaintiff has been prescribed various medications,
19  including Venlafaxine or Effexor, Tegretol or Carbamazepine,
20  Metformin, Lisinopril, Simvastatin, Zoloft, and Trazodone, as
21  well as Topamax and Percocet, Naproxen, and Nabumetone, also
22  known as Relafen.  Plaintiff has never smoked.
23           In terms of activities of daily living, plaintiff
24  is capable of showering, bathing, dressing, he claims he
25  needs assistance with.  He exercises, spends time with

1  children, can mow his lawn.  He does not shop.  He walks his
2  dog and uses the computer.
3         Procedurally, plaintiff applied for Title II
4  benefits on March 21, 2016, alleging a disability onset date
5  of January 28, 2016.  In support of his claim for benefits,
6  plaintiff alleges that he suffers from left hand and left leg
7  paralysis due to shot in the head, Type 2 diabetes, severe
8  headaches, memory loss, depression, nightmares and epilepsy.
9  That appears at 271 of the Administrative Transcript.
10        A hearing was conducted by Administrative Law
11 Judge, or ALJ, Laureen Penn on April 16, 2018 to address
12 plaintiff's claim for benefits.  Plaintiff was represented by
13 counsel other than the attorney now representing him.  During
14 that hearing the vocational expert also appeared and
15 testified at the hearing, and a translator was present.
16        On May 25, 2018, Administrative Law Judge Penn
17 issued an unfavorable decision which became the final
18 determination of the Agency.  On February 15, 2019, when the
19 Social Security Administration Appeals Council denied
20 plaintiff's request for review of the Administrative Law
21 Judge's decision, the Administrative Law Judge did review new
22 evidence admitted on behalf of the plaintiff but found no
23 reasonable probability that the new evidence would have
24 changed the outcome.
25        This action was commenced on April 15, 2019, and is

1  timely.  In her decision, ALJ Penn applied the familiar
2  five-step sequential test for determining disability.  She
3  first observed that plaintiff was last insured in December of
4  2020.  She then concluded at step one that claimant has not
5  engaged in substantial gainful activity since January 28,
6  2016, though noting, as I indicated previously, that he has
7  worked part time since that date but nothing close to SGA
8  level.
9          At step two, the Administrative Law Judge Penn
10 concluded that plaintiff suffers from severe impairments that
11 impose more than minimal limitations on his ability to
12 perform basic work functions, including generalized
13 idiopathic epilepsy, post-traumatic seizures, traumatic brain
14 injury, cerebrovascular disease, tension headaches, left foot
15 drop, unspecified acquired deformity of limb, generalized
16 anxiety disorder, insomnia, major depressive disorder,
17 adjustment disorder with depressed mood, and post-traumatic
18 stress disorder.
19         At step three, the Administrative Law Judge found
20 that none of those impairments either singly or in
21 combination meets or equals any of the listed presumptively
22 disabling conditions set forth in the Commissioner's
23 regulations, specifically considering listings 11.02, 1.02,
24 11.18, 12.02, 12.04, 12.06, and 12.15.
25         The Administrative Law Judge next concluded that

1   notwithstanding his impairments, plaintiff retains the
2   residual functional capacity to perform light work, except
3   with respect to physical limitations, he can occasionally
4   stoop, crouch, kneel, crawl, can occasionally climb stairs
5   and ramps, but cannot climb ladders, ropes, or scaffold.  He
6   can occasionally finger and handle with the left upper
7   extremity, which is the non-dominant hand.  He can
8   occasionally reach overhead with the right upper extremity,
9   which is the dominant hand.
10             With regard to mental limitations, ALJ Penn found
11  that plaintiff can perform simple, routine, repetitive work,
12  he can occasionally interact with supervisors, co-workers,
13  and the public, but cannot perform teamwork, and he cannot
14  provide direct customer service.  Applying that residual
15  functional capacity, ALJ Penn concluded at step four the
16  plaintiff is incapable of performing past relevant work,
17  which with the assistance of a vocational expert was
18  characterized as a janitor, which is generally considered
19  heavy exertion with an SVP level of two.
20             The Administrative Law Judge at step five concluded
21  that there is conflicting evidence with regard to plaintiff's
22  ability to communicate in English, but made the following
23  finding:  The claimant has at least a high school education
24  and is able to communicate in English.  That appears at
25  page 57 of the Administrative Transcript.

1    The Administrative Law Judge noted that if
2 plaintiff is capable of performing the full range of light
3 work, a finding of no disability would be directed by
4 Medical-Vocational Guideline, or Grid, 202.20.  Based on the
5 testimony of the vocational expert who was posed a
6 hypothetical question, the Administrative Law Judge concluded
7 that plaintiff is capable of performing as a conveyor line
8 worker, machine tender, and fruit distributor,
9 notwithstanding the additional non-exertional limitations set
10 forth in the RFC, and concluded that there was sufficient
11 numbers of jobs in those categories nationally that plaintiff
12 was capable of making a successful adjustment.
13    The function of the Court at this point is to
14 determine whether correct legal principles were applied and
15 result in the determination supported by substantial
16 evidence.  It is an extremely deferential standard.  Relevant
17 evidence means such -- substantial evidence means such
18 relevant evidence as a reasonable mind might accept as
19 adequate to support a conclusion.  The Second Circuit Court
20 of Appeals noted in *Brault versus Social Security*
21 *Administration*, 683 F.3d 443, 2012, the substantial evidence
22 standard means once the fact is found by an Administrative
23 Law Judge, that fact can be rejected only if a reasonable
24 factfinder would have to conclude otherwise.
25    The plaintiff in this case raises essentially three

1  contentions.  First, he maintains that the physical
2  components of the residual functional capacity are not
3  supported by any medical opinion.  Second, the plaintiff
4  claims that the mental residual functional capacity is not
5  supported, and specifically the finding that plaintiff is
6  able to learn new tasks.  And third, he challenges the
7  findings regarding his education and his ability to
8  communicate in English as not supported.
9         The function, of course, of the Administrative Law
10 Judge in the first instance and pivotal to her determination
11 is the crafting of a residual functional capacity, or RFC.
12 Applying the RFC represents a finding of the range of tasks
13 he is capable of performing notwithstanding his impairments.
14 An RFC is formed by consideration of all relevant medical and
15 other evidence.  To properly ascertain a plaintiff's RFC, an
16 ALJ must assess plaintiff's exertional capability, such as
17 his ability to sit, stand, walk, lift, carry, push, and pull.
18 He must also take into consideration non-exertional
19 limitations or impairments.  The resulting RFC determination,
20 of course, must be supported by substantial evidence.
21         In this case the determination was that plaintiff
22 can perform light work with additional limitations.  As I
23 noted above, light work as defined in 20 CFR 404.1567(b)
24 involves lifting no more than 20 pounds at a time with
25 frequent lifting or carrying of objects weighing up to

1  10 pounds.  The regulation notes that even though the weight
2  lifted may be very little, a job is in this category when it
3  requires a good deal of walking or standing, or when it
4  involves sitting most of the time with some pushing and
5  pulling of arm or leg controls.  To be considered capable of
6  performing a full or wide range of light work, he must have
7  the ability to do substantially all of these activities.  In
8  this case I note that through step four it is plaintiff's
9  burden under *Poupore* to establish not only his impairments
10 but, more critically, the resulting limitations on his
11 ability to perform basic work functions.
12          Turning first to the physical residual functional
13 capacity, there is indeed in this case a physical medical
14 opinion that speaks to plaintiff's ability to perform
15 physical functions; it is the consultative examination report
16 of Dr. Kalyani Ganesh.  It appears at page 528 to 531 of the
17 Administrative Transcript.  In her report Dr. Ganesh finds
18 that plaintiff suffers from no gross physical limitations
19 noted.  The Administrative Law Judge discussed Dr. Ganesh's
20 findings and did determine based on treatment records and
21 Dr. Ganesh's objective findings that the plaintiff suffers
22 from additional impairments or limitations, including the
23 history of mild to moderate weakness and foot drop.  That's
24 at page 56.
25          And so the determination was given only -- the

1    opinion was given only some weight.  Nonetheless, there is
2    case law that suggests that Dr. Ganesh's opinion did provide
3    substantial evidence and it was proper for the Administrative
4    Law Judge to include additional limitations based upon the
5    medical evidence and treatment notes in the record.  So I do
6    not find error in this regard.
7           The cases cited by the Commissioner support this
8    proposition, including *Gonzalez versus Colvin*, 2018 WL
9    1040250, from the Western District of New York 2018, as well
10   as *Hall versus Astrue*, 2009 WL 2366891, from the Eastern
11   District of New York 2009, and *Durante*, which is 2014 WL
12   4852881, from the District of Connecticut 2014.  And I note
13   in that regard, *Durante*, it was also the report of Agency
14   reviewing physicians at issue in this case.
15          The Administrative Law Judge properly considered
16   Dr. Greenky's notes, even though it appears that the shoulder
17   condition being addressed was temporary and found critically
18   that the plaintiff should be limited in reaching with his
19   right overhead dominant extremity, at 55.  I don't find any
20   gap in the record because the consultative examiner opinion
21   can provide substantial evidence based on *Gonzales*, which I
22   already cited.  If there is sufficient evidence to permit a
23   residual functional capacity finding, a medical source
24   statement is not required.  Second Circuit decision in *Monroe*
25   *versus Commissioner of Social Security*, 676 F.App'x 5 from

1    2017 makes that observation.  In this case I find that the
2    physical portion of the residual functional capacity is
3    supported by substantial evidence, including the opinions of
4    Dr. Ganesh and treatment notes from Dr. Greenky and other
5    providers.
6             The issue of learning new tasks presents an
7    interesting case.  The positions that were dealt with are
8    unskilled, and under 20 CFR Section 404.1568 that was in
9    effect at the relevant time, unskilled work is defined as
10   "work which needs little or no judgment to do simple duties
11   that can be learned on the job in a short period of time."
12   In this case, of course, as I indicated, the residual
13   functional capacity concludes that plaintiff can do work that
14   can be learned through observation or verbal instructions.
15            In this case there are a couple of opinions that
16   speak to learning new tasks.  Dr. Shapiro at page 525 finds
17   that plaintiff appears to have mild to moderate limitations
18   regarding his ability to learn new tasks.  Dr. Petrou at
19   page 435 and 436 from October 2016 indicates that plaintiff
20   has not been able to learn English despite attending refugee
21   school for two plus years, and the following page, can
22   understand English better than he can speak it, which is very
23   limited.  And work ability estimate in the fair region
24   according to Dr. Petrou.
25            Dr. Rashid in a May 2017 determination, or opinion

1   I should say, concluded that this patient has multiple
2   disabilities that prevent him from learning, speaking and
3   reading English.  That is at page 441 of the Administrative
4   Transcript.  The Administrative Law Judge, interestingly,
5   focused on that opinion and it was unclear to me what she was
6   suggesting.  On page 55 she states that although the form is
7   apparently signed by Dr. Rashid, the form contains spelling
8   and grammatical errors, including referring to being in a
9   coma as a comma, and do to, D-O T-O, rather than due to,
10  D-U-E T-O.  I don't know quite what she is suggesting other
11  than it appears she may be alleging that this is a forged
12  document.  It certainly appears to be significantly detailed
13  that I would question that, but in any event, there is no
14  other reason given for rejecting it or minimizing it.  She
15  goes on to state, "Furthermore, this statement is
16  inconsistent with other statements indicating that plaintiff
17  could speak some, although limited, English and understood
18  more."  And there are citations to the record.
19          The evidence, as I indicated during oral argument,
20  is equivocal concerning plaintiff's ability to speak English;
21  page 270 he indicates he can; page 394, 401 and 436
22  suggesting he may be able to.  He underwent a 45 minute
23  session with Sara Freer in English on March 13, 2018 without
24  the benefit of a translator.  That's at pages 92 through 94.
25  Dr. Shapiro's objective findings show intact memory.

1   Plaintiff admitted to Dr. Shapiro that he can perform an easy
2   job.  That's at 522.  There is a finding, as I indicated, by
3   Administrative Law Judge Penn as follows, "The claimant has
4   at least a high school education and is able to communicate
5   in English."  That's at page 57.  Under *Brault* that finding
6   cannot be rejected unless no reasonable factfinder could
7   conclude otherwise.
8          I note also that the three jobs in question were
9   all listed as unskilled work, as I indicated.  The real
10  problem I have with this is the question of education and
11  literacy.  The vocational expert does not appear to have been
12  on the telephone during the entire hearing, but, in any
13  event, the hypothetical given to the vocational expert at
14  page 82 requires the expert to assume a person who is the
15  same age, education, and past work as the claimant.  There is
16  no indication, though, that the vocational expert understood
17  that plaintiff was educated in Bosnia in a foreign language
18  and had limited ability to read and understand English.
19  Clearly he has been in the United States since 1997 and
20  worked in several settings; however, it's unclear what his
21  capabilities are.
22         The case is somewhat similar to the decision in
23  *Durakovic versus Commissioner of Social Security,* 2018 WL
24  4039372, a decision from this court in 2018 where it was also
25  argued that plaintiff could not communicate in English.  In

1  that case the ALJ broadly discussed plaintiff's ability to
2  communicate in English, but failed to set forth with
3  sufficient specificity whether or not plaintiff was literate.
4  The Court went on to state, "It is unclear from the ALJ's
5  written decision, or from her hypothetical at the hearing,
6  whether plaintiff was literate and/or whether plaintiff could
7  communicate in English."
8         The hypothetical that was given to the vocational
9  expert is obviously pivotal to the finding of no disability
10 in this case.  In this case I don't think the hypothetical
11 was sufficiently precise on plaintiff's education and his
12 ability to communicate in English, and so I do not find that
13 the Commissioner's determination is supported by substantial
14 evidence.  I think rather that the determination should be
15 vacated and the matter remanded so that there can be specific
16 findings with regard to these issues and that a vocational
17 expert could be asked to opine based on those specific
18 findings whether there is available work in the national
19 economy that plaintiff is capable of performing.
20        I do not find persuasive evidence of disability,
21 and so I am not going to direct a finding of disability, but
22 rather vacate the determination and remand the matter for
23 further consideration.
24        Thank you both for excellent presentations and I
25 hope you stay safe.

C E R T I F I C A T I O N

     I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

                                             _____
                                             EILEEN MCDONOUGH, RPR, CRR
                                             Federal Official Court Reporter